UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD SULLIVAN, JR.,

        Plaintiff,              Case No. 1:13-cv-1363

v.                                        Honorable Paul L. Maloney

SHIRLEE HARRY et al.,

        Defendants.
                                    /

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983 and state law. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff will pay the initial partial filing fee when funds become available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's § 1983 action will be dismissed for failure to state a claim. His remaining state-law claims will be dismissed without prejudice.

## Factual Allegations

Plaintiff Donald Sullivan, Jr., was a state prisoner incarcerated by the Michigan Department of Corrections (MDOC) at the Pugsley Correctional Facility (MPF) at the time of the events giving rise to the complaint. Defendants are MDOC employees: Shirlee Harry, the warden of MPF, and R. Bowerson, the Resident Unit Manager (RUM) for "housing unit 1 C/D" at MPF. (Compl., docket #1, Page ID##1-2.)

According to his *pro se* complaint, in July 2012, Plaintiff was a prisoner representative for "housing unit 1 C/D" at MPF. (*Id.* at Page ID#2.) As such, he was responsible for submitting a monthly meeting agenda to the RUM concerning any safety and security issues in the unit. In a meeting with RUM Bowerson on July 10, 2012, Plaintiff notified Bowerson that in all four showers in the unit, there were "loose/unsecured" shower drain covers that were "below surface level." (*Id.*) Bowerson indicated that he would have maintenance staff repair the drain covers.

On August 4, 2012, while Plaintiff was using one of the showers, he stepped on drain cover and it "gave way," allowing his foot to slide into the "recessed lip" of the drain, a half inch below the surface of the floor. (*Id.*) As a result, Plaintiff injured two of toes on his right foot. He allegedly experienced "searing pain," his toes turned dark red, and he lost a toenail. (*Id.*) Plaintiff filed a prisoner grievance about the incident the same day, contending that Bowerson failed to have the drain covers repaired and that the loose covers violated prison policy and constitutional standards for prisoner living conditions.

On August 16, 2012, RUM DeNeve interviewed Plaintiff regarding the grievance and told him that the drain covers had been fixed. Also, in a memorandum to the grievance coordinator,

DeNeve asserted that Bowerson submitted a work request regarding the drain covers and that they were repaired by maintenance staff on August 14, 2013. (Mem. to Grievance Coordinator, docket #1, Page ID#9.) When Plaintiff inspected the covers after his meeting with DeNeve, however, Plaintiff discovered that they had not been fixed.

Apparently, Plaintiff's grievance was denied based on DeNeve's memorandum, so Plaintiff filed an appeal to step II of the grievance process. Plaintiff asserted that the drains had not been repaired as DeNeve claimed and that Bowerson had a continuing duty to ensure that they would be fixed. Defendant Harry responded to Plaintiff's appeal and affirmed the step I response to Plaintiff's grievance, stating that, "Maintenance has responded that they were in Housing Unit 1 C/D on August 14, 2012 and completed repairs on the shower drains." (Step II Grievance Response, docket #1, Page ID#13.)

On September 10, 2012, prisoner Jurek informed Bowerson that the drain covers were loose and posed a risk of injury to prisoners. The following day, prisoner Berridge tripped on a loose drain cover and injured his toe. On October 7, 2012, prisoner Jurek again raised the issue of the loose drain covers in a proposed unit meeting agenda submitted to Bowerson.

On November 23, 2012, Plaintiff sustained another injury due to a loose drain cover. As he was taking a shower, he stepped on the drain cover and it tilted upwards, causing him to trip and stub a toe on his left foot.

As a result of his two accidents in the shower, Plaintiff damaged two toenails, one on each foot. They did not re-grow properly, which caused him pain and discomfort until he had them surgically removed on March 19, 2013.

Based on the foregoing allegations, Plaintiff claims that Defendants violated state law and prison policy when: (1) they deliberately failed to "immediately and effectively have . . . necessary repairs made" to the prison showers, and thereby failed to comply with their duty to provide and maintain safe living conditions for Plaintiff and other prisoners in their care; and (2) Defendant Harry intentionally made "false" statements in response to Plaintiff's grievance and claimed that maintenance staff had completed repairs to the shower drain covers. (Compl., docket #1, Page ID#5.) Plaintiff also contends that Defendants violated his rights under the Eighth and Fourteen Amendments because: (1) they were deliberately indifferent to the health risks posed by the loose drain covers; (2) they enticed other officials to commit "perjury" and "fabricate" work reports regarding repairs to the drain covers; and (3) they failed to establish a "bonifide and meaningful departmental system for dealing with complaints regarding in humane living conditions" at the prison facility. (*Id.* at Page ID#6.) In addition, Plaintiff claims that Defendants are liable for "gross negligence" and "wanton and wilful misconduct" resulting in physical, mental, and emotional injury. (*Id.* at Page ID##5-6.)

As relief, Plaintiff seeks damages and an order restraining MDOC employees and other state officials from retaliating against him for filing the instant action.

**Discussion**

I.      Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more

than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The Eighth Amendment "does not mandate comfortable prisons." *Rhodes*, 452 U.S. at 349. Instead, it requires prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take *reasonable* measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)) (emphasis added). Thus, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference'" to that risk. *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834). The foregoing standard includes an objective component and a subjective component. Under the objective prong, the plaintiff must demonstrate that the condition complained of was "sufficiently serious." *Farmer*, 511 U.S. at 834. A condition is sufficiently serious if it poses "a substantial risk of serious harm" to the inmate. *Id.* Put another way, the risk must be one that is "so grave that it violates contemporary standards of decency to expose *anyone*

unwillingly to [it]." *Helling v. McKinney*, 509 U.S. 29, 36 (1993). Under the subjective prong, the plaintiff must establish that the defendant was aware of and "disregarded an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Under this standard, "a prison official may be held liable . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. In other words, the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Prison officials are not free to ignore obvious dangers to inmates, and may be liable even if they do not know the exact nature of the harm that may befall a particular inmate. *See id.* at 843–44. However, officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably under the circumstances. *See id.* at 844–45. In short, "[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice." *Wright v. Taylor*, 79 F. App'x. 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835–36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

Plaintiff's allegations do not satisfy the objective prong of an Eighth Amendment claim. He complains that he was forced to take a shower while standing on or near loose drain covers. As a result, his foot slid into a half-inch depression in the floor on one occasion, and he tripped and stubbed his toe on another. These allegations fall far short of describing a risk of "serious" or "excessive" harm to Plaintiff's safety. Courts have routinely held that similar, but arguably *more* hazardous, prison conditions are not sufficiently serious to state an Eighth Amendment claim. *See, e.g.*, *Bolds v. Blackwood*, 4:13CV420-RH/CAS, 2014 WL 29446, at *2

(N.D. Fla. Jan. 3, 2014) (a broken sidewalk which caused the plaintiff to trip and fall does not pose a serious risk of harm); *Levy v. Washington State Dep't of Corr.*, C12-5236 BHS/KLS, 2013 WL 1855857, at *9 (W.D. Wash. Mar. 15, 2013) (sprinkler-head hole in the prison recreation yard which caused the plaintiff to trip and fall does not "rise to an extreme deprivation or denial of life's minimum necessities"), *report and recommendation adopted*, 2013 WL 1855854 (W.D. Wash. May 1, 2013); *Chamberlain v. Nielsen*, 2:10-CV-10676, 2010 WL 1002666, at *2 (E.D. Mich. Mar. 18, 2010) ("While a ripped shower mat presents the possibility for an inmate to slip and fall, it does not pose a substantial or excessive risk of serious harm."); *LeMaire v. Maass,* 12 F.3d 1444, 1457 (9th Cir. 1993) (shackling a dangerous inmate in a shower, even if he might fall, does not violate the Eighth Amendment); *Jackson v. Arizona,* 885 F.2d 639, 641 (9th Cir. 1989) (holding that slippery floors, without more, do "not state even an arguable claim for cruel and unusual punishment"); *Robinson v. Cuyler,* 511 F. Supp. 161, 163 (E.D. Pa. 1981) (slippery kitchen floor does not inflict cruel and unusual punishment); *Tunstall v. Rowe,* 478 F. Supp. 87 (N.D. Ill. 1979) (greasy staircase that caused prisoner to slip and fall does not violate the Eighth Amendment); *Snyder v. Blankenship,* 473 F. Supp. 1208, 1212 (W.D. Va. 1979) (soapy water leaking from dishwasher, which caused prisoner to slip and fall, does not violate the Eighth Amendment). As one court stated, "'[a] slip and fall, without more, does not amount to cruel and unusual punishment. . . . Remedy for this type of injury, if any, must be sought in state court under traditional state tort law principles.'" *Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004) (quoting *Mitchell v. West Virginia*, 554 F. Supp. 1215, 1217 (N.D.W. Va. 1983)). Likewise, the risk that a loose shower drain could cause an inmate to slip, trip, or stub his toe, is not so serious that it gives rise to an Eighth Amendment claim.

### B. Prison Grievances

Plaintiff also claims that Defendants failed to establish a meaningful process for resolving prisoner complaints and submitted, or encouraged others to submit, false statements in response to Plaintiff's grievances. Plaintiff, however, does not have a constitutional right to obtain relief through a prison grievance procedure. *See Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (stating that "there is no inherent constitutional right to an effective prison grievance procedure"); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 345, 348 (6th Cir. 2001) (same). Moreover, Plaintiff's due process rights under the Fourteenth Amendment are not implicated by Defendants' conduct in connection with the grievance process, because Plaintiff does not have a protected liberty interest in obtaining meaningful review. Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in, or constitutional right to, an effective prison grievance process, Defendants' conduct in connection with Plaintiff's grievances did not violate his constitutional rights. Thus, Plaintiff also has not stated a Fourteenth Amendment claim.

### C. State Law

Plaintiff also contends that Defendants violated state law and prison policies, but such violations are not sufficient to state a claim under § 1983. An alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-

23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Moreover, § 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. Consequently, to the extent Plaintiff's claims rely solely on state law, they are not viable under § 1983. In sum, therefore, Plaintiff does not state a § 1983 claim.

II. Supplemental Jurisdiction

Because Plaintiff does not state a viable federal claim, the Court declines to exercise jurisdiction over his claims that arise solely under state law. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also* 28 U.S.C. § 1367(c)(3) (giving the district court discretion to decline to exercise supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction). Consequently, Plaintiff's state-law claims will be dismissed without prejudice.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action under 42 U.S.C. § 1983 will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims will be dismissed without prejudice.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

(6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

        This is a dismissal as described by 28 U.S.C. § 1915(g).

        A Judgment consistent with this Opinion will be entered.


Dated: __March 10, 2014__                                /s/ Paul L. Maloney
                                                                                  Paul L. Maloney
                                                                                  Chief United States District Judge